247 F.3d 125 (4th Cir. 2001)
 MAJOR MAURICE ANDERSON, Plaintiff-Appellant,
v.
DAVID RUSSELL, Defendant-Appellee,
and
JOHN DOE, Officer; DAVID MITCHELL, Chief of Police; PRINCE GEORGE'S COUNTY, MARYLAND, a Municipal Corporation; EQUITY PROPERTY MANAGEMENT CORPORATION; IPC INTERNATIONAL CORPORATION; DAVID PEARSON; FIRST PROPERTY MANAGEMENT CORPORATION, Defendants.
MAJOR MAURICE ANDERSON, Plaintiff-Appellee,
v.
DAVID RUSSELL, Defendant-Appellant,
and
JOHN DOE, Officer; DAVID MITCHELL, Chief of Police; PRINCE GEORGE'S COUNTY, MARYLAND, a Municipal Corporation; EQUITY PROPERTY MANAGEMENT CORPORATION; IPC INTERNATIONAL CORPORATION; DAVID PEARSON; FIRST PROPERTY MANAGEMENT CORPORATION, Defendants.
 No. 00-1406 No. 00-1430
 UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
 Argued: January 24, 2001
Decided: March 29, 2001
 
 Appeals from the United States District Court for the District of Maryland, at Greenbelt. Deborah K. Chasanow, District Judge.
 (CA-93-363-DKC)[Copyrighted Material Omitted]
 COUNSEL: ARGUED: Douglas Alan Datt, GAVETT & DATT, P.C., Rockville, Maryland, for Appellant. Jay Heyward Creech, Upper Marlboro, Maryland, for Appellee. ON BRIEF: Rhoda S. Barish, GAVETT & DATT, P.C., Rockville, Maryland, for Appellant. Sean D. Wallace, Upper Marlboro, Maryland, for Appellee.
 Before WILKINSON, Chief Judge, and WIDENER and WILLIAMS, Circuit Judges.
 Affirmed by published opinion. Judge Williams wrote the opinion, in which Chief Judge Wilkinson and Judge Widener joined.
 OPINION
 WILLIAMS, Circuit Judge:
 
 
 1
 Major Maurice Anderson brought suit against Officer David Russell,[1] claiming violations of 42 U.S.C.A. S 1983 and various state laws arising from the alleged use of excessive force incident to Anderson's seizure. Following a jury verdict in favor of Anderson as to his S 1983 claim, the district court granted Russell's motion for judgment as a matter of law with respect to Russell's qualified immunity defense, but it denied his motion with respect to the jury's finding of excessive force. We conclude that Officer Russell acted reasonably in using deadly force to protect himself against a perceived immediate and deadly threat posed by Anderson. Accordingly, we affirm the entry of judgment in favor of Russell, but on different reasoning than that of the district court.
 
 I.
 A.
 
 2
 Russell is a Prince George's County police officer. On December 28, 1991, Russell was providing part time security services at Prince George's Plaza mall, along with Officer David Pearson.[2]
 
 
 3
 Anderson arrived at the mall at approximately 4:30 in the evening. He had been drinking wine during the day and purchased another bottle of wine at a store in the mall, which he drank while walking around the mall.[3] Anderson was wearing a black jacket, which was open. Underneath, he wore three shirts and a sweater. Inside of the shirts, Anderson had tucked a shoe polish container inside an eyeglasses case on his left side by his belt. Anderson also was carrying a portable Walkman radio in his back pocket and was listening to the radio with earphones, which were covered by a hat.
 
 
 4
 Russell testified that at approximately 6:00 p.m., a mall patron approached Russell and informed him that a man appeared to have a gun under his sweater, pointing to Anderson. Russell spent the next twenty minutes observing Anderson and saw a bulge under Anderson's clothing on his left side near his waist band that Russell believed to be consistent with a handgun, corroborating the citizen's report.
 
 
 5
 Russell decided to confront Anderson to attempt to discern whether Anderson was armed and, if so, what his intentions were. When Anderson exited the mall, Russell and Pearson followed him.[4] Russell and Pearson approached Anderson with their guns drawn and instructed him to raise his hands and get down on his knees. While Anderson initially complied with the order to raise his hands, he later lowered them, without explanation to the officers, in an attempt to reach into his back left pocket to turn off his Walkman radio. Believing Anderson was reaching for the reported weapon, Russell shot Anderson three times. Anderson sustained permanent injuries to his left arm, left thigh, left tibia, and left fibula as a result of the shooting. A later search of Anderson's person and his belongings revealed the presence of the radio and that he was unarmed.
 
 B.
 
 6
 Anderson filed this case in the Circuit Court for Prince George's County. After removal of the case to the United States District Court for the District of Maryland, the case was tried before a jury.
 
 
 7
 Russell moved at the close of Anderson's case and again at the conclusion of the presentation of all evidence for judgment as a matter of law as to all claims.[5] The district court reserved ruling upon the motion and submitted the claims to the jury for consideration.
 
 
 8
 With respect to the S 1983 excessive force claim, the district court submitted to the jury the questions of whether Russell had used excessive force against Anderson and, if so, whether Russell was entitled to qualified immunity. The jury found in favor of Anderson on both questions.[6]
 
 
 9
 After return of the jury verdict, Russell renewed his motion for judgment as a matter of law as to the S 1983 claim pursuant to Federal Rule of Civil Procedure 50(b), or in the alternative for a new trial pursuant to Federal Rule of Civil Procedure 59. Russell argued that the district court erred by submitting the questions of excessive force and qualified immunity to the jury because both questions should have been resolved as matters of law. The district court granted Russell's Rule 50(b) motion as to the qualified immunity issue, but it denied the motion as to the excessive force issue. With respect to the excessive force issue, the district court stated, "the evidence is much, much too conflicting on whether, in fact, the circumstances presented as a matter of law made the use of force constitutional." (J.A. at 577.) With respect to the qualified immunity issue, however, the district court held that because Russell's use of force complied with his training, he was entitled to qualified immunity as a matter of law.
 
 
 10
 Anderson appeals the district court's qualified immunity ruling, while Russell appeals the district court's excessive force ruling. We hold that, as a matter of law, Russell's use of force did not violate the Fourth Amendment and, therefore, that the S 1983 excessive force claim should not have been submitted to the jury. Accordingly, we affirm the entry of judgment as a matter of law in favor of Russell on Anderson's excessive force claim.[7]
 
 II.
 A.
 
 11
 We review de novo the grant or denial of a motion for judgment as a matter of law. See Malone v. Microdyne Corp., 26 F.3d 471, 475 (4th Cir. 1994). In considering a motion for judgment as a matter of law contrary to the jury's findings, we construe the evidence in the light most favorable to the party against whom the motion was made and ask whether "there is substantial evidence in the record to support the jury's findings." Wilhelm v. Blue Bell, Inc., 773 F.2d 1429, 1433 (4th Cir. 1985).
 
 
 12
 Claims that law enforcement officers used excessive force when making an arrest "should be analyzed under the Fourth Amendment and its `reasonableness' standard." Graham v. Connor, 490 U.S. 386, 395 (1989). The standard of review is an objective one. Id. at 397. The question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force. Id. A police officer may use deadly force when the officer has "probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others." Tennessee v. Garner, 471 U.S. 1, 11 (1985). Moreover, "the `reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. A reviewing court must make "allowance for the fact that police officers are often forced to make split-second judgments -in circumstances that are tense, uncertain, and rapidly evolving." Id. at 397. "The court's focus should be on the circumstances at the moment force was used and on the fact that officers on the beat are not often afforded the luxury of armchair reflection." Elliott v. Leavitt, 99 F.3d 640, 642 (4th Cir. 1996) (citations omitted).
 
 B.
 
 13
 Anderson argues that it was proper for the jury to resolve the issue of excessive force because reasonable minds could differ as to whether Russell had probable cause to believe that Anderson posed a serious threat to Russell. See Tennessee v. Garner, 471 U.S. 1, 11 150 S.Ct. 1694,85 L.Ed.2d 1 (1985). Given the uncontroverted evidence as to what Russell perceived immediately before firing, we do not believe that there is a legally sufficient evidentiary basis for a rational jury to find for Anderson on the issue of excessive force. Accordingly, we hold that Russell was entitled to judgment as a matter of law on the excessive force claim.
 
 
 14
 We first note that the evidence conclusively establishes that Russell reasonably perceived Anderson to be armed with a gun. Russell testified that he believed Anderson to be armed based upon a citizen's report that was later corroborated by Russell's own observation of a bulge near Anderson's waistband.[8] No evidence was introduced that refuted Russell's testimony regarding the citizen's report or his perception of the bulge.[9] Moreover, Anderson concedes that he was carrying an eyeglass case stuffed with shoe polish in the same area in which Russell testified to observing a bulge. Once Russell perceived a bulge consistent with the shape of a gun, he was justified in believing that Anderson was armed and dangerous. Pennsylvania v. Mimms, 434 U.S. 106, 112 (1977) ("The bulge in the jacket permitted the officer to conclude that Mimms was armed and thus posed a serious and present danger to the safety of the officer."). Thus, there is no doubt that Russell reasonably believed Anderson to be armed at the time he approached Anderson.[10]
 
 
 15
 Upon approaching Anderson, the officers ordered Anderson to put his hands over his head. Russell and Pearson testified, and Anderson concedes, that immediately before Russell fired, Anderson was lowering his hands in the direction of the bulge in disregard of the officers' order. Nevertheless, Anderson argues that a triable issue of fact exists regarding the precise positioning of Anderson's hands and the speed at which he was lowering his hands at the time he was shot.
 
 
 16
 Larry Williams, who was a witness to the incident, testified that, although Anderson was lowering his hands, he was lowering them slowly, and Anderson's hands "were still around head level when he was shot." (J.A. at 152.) At the time of the incident, Williams was between twenty to thirty feet away from Anderson, whereas the officers were ten feet away. Moreover, Williams was watching the incident from inside the mall and, at the time Anderson was shot, Williams's view of Anderson's hands was obstructed by a partition in the door frame through which he was viewing the incident.
 
 
 17
 To evaluate excessive force, we view the facts from the perspective of the officer. See Graham v. Connor, 490 U.S. 386, 396-97 (1989). In a rapidly evolving scenario such as this one, a witness's account of the event will rarely, if ever, coincide perfectly with the officers' perceptions because the witness is typically viewing the event from a different angle than that of the officer. For that reason, minor discrepancies in testimony do not create a material issue of fact in an excessive force claim, particularly when, as here, the witness views the event from a worse vantage point than that of the officers. See Sigman v. Town of Chapel Hill, 161 F.3d 782, 788 (4th Cir. 1998) ("Their observations cannot effectively impact the credibility of Officer Riddle's testimony (or that of all five other officers on the scene) as to his perceptions of what he saw from an entirely different -and closer -vantage point."). Thus, the discrepancies between the officers' testimony and Williams's testimony about the positioning and speed at which Anderson was lowering his hands do not raise an issue of triable fact.
 
 
 18
 The evidence establishes that immediately before Russell fired, Anderson was reaching toward what Russell believed to be a gun. Any reasonable officer in Russell's position would have imminently feared for his safety and the safety of others. This Circuit has consistently held that an officer does not have to wait until a gun is pointed at the officer before the officer is entitled to take action. See McLenagan v. Karnes, 27 F.3d 1002, 1007 (4th Cir. 1994) (holding that officer was entitled to use deadly force when the officer had reason to believe the suspect was armed, although the officer could not confirm that the suspect was armed); Slattery v. Rizzo , 939 F.2d 213, 215-16 (4th Cir. 1991) (holding that deadly force was appropriate when the suspect failed to comply with the officer's order to raise his hands and the officer reasonably believed the suspect to be coming at him with a weapon, although the "weapon" turned out to be a beer bottle); cf. Greenidge v. Ruffin, 927 F.2d 789, 792 (4th Cir. 1991) (affirming the entry of judgment in favor of Officer Ruffin although Ruffin was unable to confirm the nature of the weapon, which turned out to be a wooden nightstick, before using deadly force). We have further held that an officer is not required to see an object in the suspect's hand before using deadly force. McLenagan, 27 F.3d at 1007 ("[W]e do not think it wise to require a police officer, in all instances, to actually detect the presence of an object in a suspect's hands before firing on him."); Sigman, 161 F.3d at 788 ("Notwithstanding the possibility of a dispute about whether a knife was actually in Sigman's hand at the moment of the shooting, Officer Riddle, and the other officers present, acted on the perception that Sigman had a knife in his hand."). Accordingly, because Russell had sound reason to believe that Anderson was armed, Russell acted reasonably by firing on Anderson as a protective measure before directly observing a deadly weapon.
 
 
 19
 Anderson next argues that a material factual dispute exists as to the reasonableness of Russell's conduct because Russell failed to utilize available cover behind protective pillars rather than firing upon Anderson. As we stated in Elliott, the "suggestion that the officers might have responded differently is exactly the type of judicial second look that the case law prohibits." Elliott v. Leavitt, 99 F.3d 640, 643 (4th Cir. 1996). Accordingly, we decline to adopt 20/20 hindsight to second guess Russell's decision to shoot rather than take cover, given that Russell reasonably believed his life to be in imminent danger.
 
 
 20
 Finally, Anderson argues that Russell's decision to shoot was unreasonable given the minor nature of the suspected criminal activity at issue. See Graham, 490 U.S. at 393 (establishing that the severity of the crime at issue is one factor to evaluate when analyzing whether an officer's conduct was reasonable in an excessive force claim). Anderson argues that at the time Russell approached Anderson, Russell suspected Anderson only of a possible violation of Maryland's concealed weapons law, which is a misdemeanor violation. See Md. Ann. Code Art. 27, S 36B (1991). Initially, we note that Anderson misunderstands the nature of Russell's suspicion at the time Russell approached Anderson. Russell approached Anderson not simply to determine whether Anderson was violating Maryland's concealed weapons law; rather Russell sought to determine whether Anderson intended to use the concealed weapon in a way that would put himself, the mall patrons, or other citizens in jeopardy. Thus, Russell's approach was motivated not only by his concern that Anderson was violating Maryland's concealed weapons law, but also by his concern of the possibility of very serious impending criminal activity.
 
 
 21
 Assuming, however, that the suspected criminal activity at issue was relatively minor, that factor would prove irrelevant to our excessive force analysis because our focus is on the circumstances as they existed at the moment force was used. See Elliott, 99 F.3d at 642; Greenidge, 927 F.2d at 791-92 ("In light of .. . the Supreme Court's focus on the very moment when the officer makes the `split-second judgments,' . . . events which occurred before Officer Ruffin opened the car door and identified herself to the passengers are not probative of the reasonableness of Ruffin's decision to fire the shot.") (emphasis added) (citing Graham, 490 U.S. 386). At the precise moment that Russell used deadly force, he reasonably believed that Anderson posed a deadly threat to himself and others, making the nature of the suspected criminal activity at issue at the time Russell approached Anderson irrelevant.
 
 
 22
 Russell ultimately was mistaken as to the nature and extent of the threat posed by Anderson, which resulted in a tragic consequence to Anderson. Nevertheless, as we stated in Elliott , "the Fourth Amendment does not require omniscience. . . . Officers need not be absolutely sure . . . of the nature of the threat or the suspect's intent to cause them harm -the Constitution does not require that certitude precede the act of self protection." Elliott , 99 F.3d at 644; see also Reese v. Anderson, 926 F.2d 494, 501 (5th Cir. 1991) ("Also irrelevant is the fact that Crawford was actually unarmed. Anderson did not and could not have known this. The sad truth is that Crawford's actions alone could cause a reasonable officer to fear imminent and serious physical harm."). Anderson's actions unwittingly caused Russell to reasonably fear imminent and serious physical harm. Accordingly, we do not believe there is sufficient evidence to support the jury's finding with respect to excessive force. Therefore, Russell is entitled to the entry of judgment as a matter of law as to Anderson's excessive force claim.
 
 III.
 
 23
 Russell's split-second decision to use deadly force against Anderson was reasonable in light of Russell's well-founded, though mistaken, belief that Anderson was reaching for a handgun. Thus, Russell's use of force does not constitute a Fourth Amendment violation. Of course, it is extremely unfortunate that Anderson was seriously injured; however, "S 1983 does not purport to redress injuries resulting from reasonable mistakes." McLenagan v. Karnes, 27 F.3d 1002, 1008 (4th Cir. 1994). Because substantial evidence does not support the jury's finding of excessive force, we affirm the district court's entry of judgment as a matter of law in favor of Russell.
 
 AFFIRMED
 
 
 Notes:
 
 
 [1]
 Anderson also included as defendants Officer David Pearson, Prince George's County and its police chief, a security services company, and a mall management company. The district court granted the request of Prince George's County and its police chief for bifurcated trials as to Anderson's municipal liability claim against them, and the parties later agreed to dismiss the municipal liability claim. The district court granted summary judgment on all claims for the remaining defendants, except with respect to Officer Russell.
 
 
 [2]
 The parties stipulated that Russell was acting in his capacity as a police officer at the time of the incident.
 
 
 [3]
 Anderson admitted to being intoxicated that evening.
 
 
 [4]
 Russell testified that they planned their approach of Anderson to get him away from the people in the mall and "in a position where other[s] weren't in danger." (J.A. at 214.)
 
 
 [5]
 The submitted claims were theS 1983 excessive force claim, assault and battery, false imprisonment, and the availability of punitive damages.
 
 
 [6]
 The jury also found that Russell was not liable for false imprisonment and determined that punitive damages should not be awarded. It was unable to reach a unanimous verdict on the assault and battery claim.
 
 
 [7]
 Because we resolve this appeal on the ground that Russell's use of deadly force did not violate the Fourth Amendment, we need not resolve the issue of whether, and to what extent, the reasonableness inquiry with respect to excessive force and qualified immunity merges. See Saucier v. Katz, 121 S. Ct. 480 (2000) (granting certiorari on, inter alia, the issue of whether the reasonableness inquiry merges when analyzing qualified immunity in an excessive force claim).
 
 
 [8]
 Unlike in Florida v. J.L. , 529 U.S. 266 (2000), which involved an anonymous telephone tip, the citizen who notified Russell that Anderson appeared armed approached Russell in person.
 
 
 [9]
 To attempt to create a factual dispute, Anderson points to Pearson's testimony, in which Pearson states that he did not personally perceive a bulge under Anderson's clothing. Obviously, what Pearson perceived in no way contradicts or otherwise affects the issue of whether Russell perceived a bulge.
 
 
 [10]
 We do not address the propriety or the manner of the initial seizure of Anderson because in the proceedings below, Anderson challenged only the use of force during the seizure and did not present a Fourth Amendment challenge to the seizure itself.