**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-6256

JAMES ERICK JONES,

Plaintiff - Appellant,

v.

MULLINS POLICE DEPARTMENT; OFFICER BAILEY,

Defendants - Appellees.

Appeal from the United States District Court for the District of
South Carolina, at Beaufort. Joseph F. Anderson, Jr., District
Judge. (9:07-cv-00497-JFA)

Argued: October 28, 2009        Decided: December 10, 2009

Before WILKINSON and NIEMEYER, Circuit Judges, and Anthony J.
TRENGA, United States District Judge for the Eastern District of
Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Neal Lawrence Walters, UNIVERSITY OF VIRGINIA SCHOOL OF
LAW, Appellate Litigation Clinic, Charlottesville, Virginia, for
Appellant. Mason Abram Summers, RICHARDSON, PLOWDEN & ROBINSON,
PA, Columbia, South Carolina, for Appellees. **ON BRIEF:** Seth M.
Jessee, Third Year Law Student, John F. Anderson, Third Year Law
Student, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Appellate
Litigation Clinic, Charlottesville, Virginia, for Appellant.
Douglas C. Baxter, RICHARDSON, PLOWDEN & ROBINSON, PA, Columbia,
South Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellant James Erick Jones ("Jones") filed a claim under 42 U.S.C. § 1983 against Officer Larry Bailey ("Bailey"), a police officer in the Mullins, South Carolina Police Department (the "Department"), and also against the Department itself. Jones alleges that Bailey used excessive force in violation of the Fourth Amendment in connection with his arrest on November 1, 2006 and that the Department is also liable for that use of excessive force based on its hiring of Bailey. The District Court entered summary judgment against Jones on both of these claims, and Jones has appealed from that ruling. We affirm.

I.

As set forth in his verified complaint,[1] Jones alleges that on November 1, 2006, at approximately 2:30 a.m.,[2] Bailey "maliciously, recklessly and unlawfully" tailgated Jones' vehicle with his police cruiser's high beams on, thereby "concealing his identity" for approximately one half mile as

---

[1] The District Court's record for the purposes of appellees' motion for summary judgment consists of Jones' verified complaint, Bailey's affidavit, and Jones' subsequently filed affidavit.

[2] In a subsequently filed unverified "Correction in Evidence," Jones states that the encounter occurred at 12:30 a.m.

3

Jones drove to "a secluded area." JA at 8. Feeling "endangered," Jones "proceed[ed] to flee wrecking [his] vehicle." Id. Bailey then rammed his vehicle into the rear driver's side of Jones' vehicle. Jones continues:

> Upon apprehending me (James Jones) and rendering me unarmed, Officer Larry Bailey then did unjustly and without cause pull his firearm and shot me (James Jones) once in the left side adominal[sic] area at close range. Officer Larry Bailey then did shove me (James Jones) into the driver['s] side door of his vehicle[,] point his firearm a second time in the upper area of the left side of my face, firing a second shot. Which I (James Jones) avoid because upon noticing Officer Larry Bailey['s] intentions and Gods Mercy I grab and pushed the weapon away and began to struggle with Officer Bailey in fear of my life.

JA at 8-9. Jones also alleges that "there is probable cause to believe that the Mullins Police Department did knowingly employ Officer Bailey whom had a tarnished and unsatisfactory record." Id.

In response to the verified complaint, Bailey and the Department filed a motion for summary judgment. In an affidavit filed in support of that summary judgment motion, Bailey gives the following account of his encounter with Jones. On November 11, 2006,[3] while on patrol, Bailey noticed a vehicle recklessly

---

[3] The conflict in the stated dates of Jones' arrest (November 1 compared to November 11, 2006) is not addressed in the record, either in the District Court or this Court. Nevertheless, this conflict is not a material one for the purposes of the District Court's summary judgment ruling that is before us for review.

4

traveling in excess of the posted speed. After he activated his patrol car's blue lights, the vehicle failed to stop, accelerated for a distance, and then suddenly slammed on its brakes, causing the vehicles to collide. Jones then exited this vehicle and attacked Bailey, causing both to fall to the ground. While on the ground, Jones grabbed Bailey from behind, placed a weapon to the side of his head, and told Bailey that if he moved, Jones would kill him. Bailey was able to unholster his weapon with his right hand and reach across his body to fire his weapon from behind and to his left side, hitting Jones in the stomach. At the time he fired his weapon, "[Bailey] feared for his life," believing that Jones was going to kill him and "that his actions were reasonable under the circumstances." JA at 23.

In response to Bailey's affidavit, Jones filed an affidavit in which he repeats much of his original account,[4] without disputing the core facts stated in Bailey's affidavit. Specifically in this regard, Jones does not dispute, as Bailey affirmed, that the blue lights on Bailey's police cruiser had been activated during the encounter or that, during the struggle

---

[4] There appears to be some non-material differences in Jones' description of events as between the verified complaint and Jones' supplemental affidavit. In Jones' affidavit, Jones attributes the damage to his car entirely to the collision that occurred when Bailey rammed him, while in the verified complaint, the "wrecking" of the car is described within the context of Jones' attempt to flee from Bailey.

leading up to the shooting, Jones grabbed Bailey from behind, placed a gun to Bailey's head, and threatened to kill Bailey if he moved. Moreover, Jones does not dispute, and his own version of the facts is not inconsistent with, Bailey's description of how he and Jones were positioned relative to each other when Bailey discharged his gun. While Jones states that Bailey shot him after he "was rendered unarmed," he does not claim that Bailey knew he had been "rendered unarmed" when Bailey shot him during the struggle. Jones also does not claim that Bailey knew, or even that he should have known, that at some point during the continuous struggle that ensued from the moment Jones exited his vehicle up until the gunshot to Jones' abdomen, Jones no longer presented a threat to Bailey.

## II.

The motion for summary judgment was initially considered by the Magistrate Judge who, on January 3, 2008, issued his Report and Recommendation, recommending that Bailey's and the Department's motion for summary judgment be granted. In his Report and Recommendation, the Magistrate Judge found that Bailey's use of force was objectively reasonable in light of the circumstances at the time and that Jones' constitutional rights were therefore not violated. He also found that Bailey was entitled to qualified immunity, that the Department could not be

6

liable under the theory of *respondeat superior,* and that Jones had not come forward with any evidence to otherwise establish liability on the part of the Department.

Jones timely filed objections to the Report and Recommendation and the District Court reviewed the motion for summary judgment *de novo* pursuant to 28 U.S.C. § 636(b)(1). Based on that review, the District Court overruled Jones' objections, adopted the recommendations set forth in the Report and Recommendation, and granted Bailey's and the Department's motion for summary judgment. We review a grant of summary judgment *de novo*, viewing the facts in the light most favorable to plaintiff, the non-prevailing party. See Holland v. Washington Homes, Inc., 487 F.3d 208, 213 (4th Cir. 2007).

III.

A.

Section 1983, by its own terms, prohibits constitutional violations under color of state law. In this case, Jones claims that his constitutional rights under the Fourth Amendment were violated when Bailey used excessive force. In order to survive a motion for summary judgment, Jones was required to present facts sufficient to allow a reasonable fact finder to conclude that Bailey used excessive force under the circumstances. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) (explaining that a

7

non-moving party must come forward with facts sufficient to establish a genuine issue of material fact for trial). In assessing claims of excessive force under the Fourth Amendment, the Court must apply a "reasonableness standard." See Graham v. Connor, 490 U.S. 386, 395 (1989). This standard of review is an objective one, and the question is whether an objectively reasonable officer under the same circumstances would have concluded that a threat existed to justify the particular use of force. Anderson v. Russell, 247 F.3d 125, 129 (4th Cir. 2001). To determine the reasonableness of a particular use of force, it is important for a court to assess the situation "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396-397. A police officer may use lethal force if the police officer has "probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others." Tennessee v. Garner, 471 U.S. 1, 11 (1985).

In this case, Bailey shot Jones during what both men describe as a life and death struggle, during which Jones placed his own gun to Bailey's head and threatened to kill him. Whether Bailey acted reasonably must be assessed under these circumstances. See Elliot v. Leavitt, 99 F.3d 640, 642 (4th Cir. 1996) ("The court's focus should be on the circumstances at the moment force was used and on the fact that officers on the beat

8

are not often afforded the luxury of armchair reflection."). Jones contends that he was "rendered unarmed" before Bailey shot him, but there is no contention that Bailey *knew* that Jones was disarmed and no longer constituted a threat when Bailey shot Jones. Indeed, within the context of the struggle that followed Jones' exit from his vehicle with a gun, late at night, in a secluded area, the facts, as described by Jones himself, demonstrate that Bailey had a reasonable fear that Jones was armed and dangerous at the time he shot Jones. Even if Jones' description of the struggle were accepted as true, no reasonable jury could find that Bailey was not under a reasonable apprehension of serious physical harm at the hands of Jones when he shot Jones. See Garner, 471 U.S. at 11.

Jones urges us to place the struggle and the shooting within the context of what Jones claims was Bailey's initial use of excessive force in running Jones' car off the road. Again, even accepting as true Jones' account of the events leading up to the shooting, it remains uncontested that upon seeing Jones drive by, Bailey activated his police cruiser's blue lights to signal Jones to pull over, and Jones not only failed to stop, but also attempted to flee. Jones' own description of the encounter places Bailey's police cruiser next to Jones' vehicle before the two vehicles collided. By the time the collision between the two vehicles occurred and Jones exited his vehicle,

it would have been obvious to any reasonable observer in Jones' situation that the other vehicle was a police cruiser and that Bailey was a uniformed police officer. For that reason, Bailey would have reasonably thought that his status as a police officer was known to Jones and that Jones' conduct could not be explained by anything other than an intention to harm him. In any event, whether or not Jones was under some misapprehension as to Bailey's identity, the fact remains that Bailey needed to respond instantaneously to Jones' imminent threats to kill him. Viewed from the point of view of the objectively reasonable officer as required by Graham, Bailey was confronted by a man who emerged from his car with a firearm threatening to use it after attempting to flee a police cruiser with its blue lights flashing. The District Court correctly concluded that there were no genuine issues of material fact and Bailey was entitled to judgment as a matter of law on Jones' Fourth Amendment claim under Section 1983.

## B.

The District Court was also correct in concluding that Bailey was entitled to qualified immunity from any Fourth Amendment violation. When government officers are performing a discretionary function, they are entitled to a defense of qualified immunity unless their conduct clearly violates an established constitutional right that the officer reasonably

would have known to exist. Harlow v. Fitzgerald, 457 U.S. 800 (1983)(granting qualified immunity in the Section 1983 context). Whether or not a police officer is entitled to qualified immunity is a question of law for the court, and when there are no relevant disputed material facts, a court should rule on the qualified immunity issue at the summary judgment stage. Willingham v. Crooke, 412 F.3d 553 (4th Cir. 2005) ("Ordinarily, the question of qualified immunity should be decided at the summary judgment stage.").

In this case, as we have discussed above, Bailey did not violate Jones' Fourth Amendment rights at all, much less violate a clearly established right that Jones had under the circumstances. No reasonable law enforcement officer would think that in the situation that Bailey found himself, he would not be entitled to protect himself from Jones' threats of deadly force.

IV.

The District Court also dismissed Jones' claim against the Department. The Court must therefore determine whether the Department was entitled to judgment in its favor based on the absence of any genuine issues of material fact.

The Court notes initially that there can be no municipal liability in the absence of an underlying constitutional violation. Since the Court has found that Jones did not suffer

11

any constitutional violation, there is no basis for imposing liability on the Department. Nevertheless, the Court will review the District Court's decision, which appears to have been issued on alternative grounds.

Section 1983 does not limit its reach to individual state actors who violate plaintiffs' constitutional rights; it also allows claims against municipalities. In Monell v. Dept. of Social Servs., 436 U.S. 658 (1978), the Supreme Court established that a municipality could only be held liable if it put into effect a policy or custom that caused a deprivation of federal rights. Id. at 690-691. Here, Jones bases his Section 1983 claim against the Department solely on its hiring of Bailey. While a Section 1983 violation can be based on even a single hiring decision, Board of County Commissioners of Bryan County (Bryan) v. Brown, 520 U.S. 397 (1967), Jones' claim is viable only if the Department was "deliberately indifferent" towards how its hiring decision could lead to a deprivation of federal rights. Id. at 407. The standard is a high one. As the Supreme Court observed in Bryan:

> Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'

12

Id. at 411.

In the District Court, Jones did not assert liability against the Department based on a claim of "deliberate indifference." Rather, he based his claim against the Department only on the theory of *respondeat superior.* A municipality, however, is not liable for constitutional deprivations under Section 1983 based on the doctrine of *respondeat superior.* Monell*, 436 U.S. at 691 (1978)("[A] municipality cannot be held liable *solely* because it employs a tortfeasor . . . a municipality cannot be held liable under Section 1983 on a *respondeat superior* theory.") (emphasis in original). For these reasons, the District Court's dismissal of Jones' claim against the Department must be affirmed.[5]

---

[5] On appeal, Jones does assert that the Department may be liable under the "deliberate indifference" standard articulated in Bryan*. Jones did not raise this argument in the District Court, and he therefore forfeited it. See Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (1985) (explaining that *pro se* litigants still need to raise arguments at the trial level in order to preserve those issues for appeal). Nevertheless, all that Jones alleges in connection with his claim against the Department is that Bailey had been reprimanded in the past while working for a different police department. That allegation is clearly insufficient to support a claim under either Monell, 436 U.S. at 691, or Bryan*, 520 U.S. at 411.

13

V.

The District Court correctly concluded that there were no genuine issues of material fact and that Bailey and the Department were entitled to judgment in their favor as a matter of law on Jones' Section 1983 claim that he suffered a constitutional deprivation of his Fourth Amendment rights based on the alleged use of excessive force and the Department's hiring of Bailey. For these reasons, we affirm the judgment of the District Court.

AFFIRMED