NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0601n.06

No. 12-1785

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| DOMINIQUE EDGERSON, | ) | |
| | ) | |
| Plaintiff – Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| BLAKE MATATALL, | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| Defendant – Appellant, | ) | MICHIGAN |
| | ) | |
| CITY OF SOUTHFIELD and | ) | |
| LAWRENCE PORTER, | ) | |
| | ) | |
| Defendants. | ) | |

FILED
Jun 25, 2013
DEBORAH S. HUNT, Clerk

Before: KEITH, WHITE, and STRANCH, Circuit Judges.

**JANE B. STRANCH**, Circuit Judge. Plaintiff Dominique Edgerson brought this § 1983 action after defendant police officer Blake Matatall shot Edgerson several times while Edgerson fled on foot after a high-speed car chase. Edgerson alleges that Officer Matatall used excessive force by shooting Edgerson, who was unarmed, after Edgerson had fallen to the ground and was in a "surrender position." Officer Matatall claims he shot Edgerson while Edgerson ran and after Edgerson mimed pointing a weapon at him. The district court denied qualified immunity to Officer Matatall, who filed this interlocutory appeal. Officer Matatall's appeal, however, fails to abide by the jurisdictional requirements for an appeal of a denial of qualified immunity. Because his argument relies entirely on his own disputed version of the facts, we **DISMISS** the appeal for lack of jurisdiction.

# I. BACKGROUND

On December 19, 2007, Officer Matatall and Sergeant Lawrence Porter, who is also a defendant in this case, were on duty for the City of Southfield police department. The following facts, as described by the district court, are not in dispute:

> Matatall initially pursued a vehicle occupied by Plaintiff and Eric Williams because the vehicle [a GMC Yukon] matched the description of a vehicle involved in a previous incident with officers on December 17, 2007, including that it had no license plate, it had collision damage consistent with the prior incident, and it fled at a high rate of speed when Matatall pulled along side the vehicle on December 19, 2007.
>
> The vehicle pursuit was terminated by Matatall intentionally colliding with the GMC Yukon. When the pursuit terminated, both Plaintiff and Williams fled on foot.
>
> Porter fired several shots at Williams, however, no person was struck by this gun fire. Despite shots being fired by Porter, both Plaintiff and Williams continued to flee in different directions. Porter yelled warnings to Matatall and other responding officers, verbally and via radio, that both subjects were armed.
>
> Williams was apprehended by Porter after a short foot pursuit and a pistol was recovered a few feet away from him. Williams admits that he was armed with a handgun during the incident.

D. Ct. Order 3–4, R. 33 at PageID #528–29 (citations omitted). At this point, however, the parties' stories diverge.

## A. Plaintiff's version of the facts

Edgerson testified that he ran from police, slipped and fell with his hands outstretched, and was shot by Officer Matatall five times after he had already fallen to the ground and was lying face-down in a surrender position.

When his fleeing car crashed into a telephone pole, Edgerson was not wearing a seatbelt, hit his head, and was hurt. When the car came to a stop, he was "dazed" and it took him "maybe like

2

two, three minutes" to exit the car. He had been in the passenger seat, but the passenger side door was blocked by the police car, so he eventually followed Williams, the driver, out of the driver's side door. Edgerson testified that, after he exited the vehicle and started to run away, he did not turn to look back to see if the police were chasing him.

After running "not that long," Edgerson slipped and fell face-down on some snow and ice. He testified that he lost consciousness for a moment when he fell, but that he "was more basically in shock so much more than, like, sleep unconscious." Edgerson had been carrying a gray cell phone in his right hand while running, but he dropped the phone onto the ground beside him when he fell. Edgerson testified that after he fell, his hands were outstretched above him. At that point, he remained on the ground, face down, and he testified that "[b]asically I was surrendering." He testified that "once I fell, I knew that I was, you know, caught. I couldn't run no more" and that "[a]t that point I'm just – just there, sort of, you know, surrendered, like you know, face down."

According to Edgerson, it was only at this point, while he was lying on the ground, that Officer Matatall shot him. He testified that he did not hear any gun shots fired while he was running. And he testified that it was only after he was lying on the ground, in shock, that he was shot five times. At that point, his cell phone had already fallen out of his hand. All five bullets entered through the back of his lower right leg, from the knee down.

**B. Defendant's version of the facts**

Officer Matatall's story is very different. He testified that Edgerson repeatedly looked back and appeared to be aiming a weapon at him, that he shot at Edgerson and hit him while he was still standing, and that after Edgerson fell he turned around again. In his brief on appeal, Officer Matatall quoted his own testimony of the events:

3

[H]e keeps looking back and pointing the object at me and at that - - through that whole process, I'm continuing to shoot. He then falls to the ground and continues to point the object at me. I actually maintained cover behind a vehicle, and, you know, yell at him multiple times to drop the object. Me knowing that he fell to the ground because he had been hit, I'm yelling at him to drop the object because he is still holding the object up pointing it at me. He eventually drops it and I end up running toward him safely with my gun drawn and securing him by putting him in handcuffs and realizing that the object he had was a cell phone that was opened up.

Def.'s Br. 20 (quoting Def.'s Dep. 329).

Officer Matatall's story is largely corroborated by a witness to the incident who stated that Edgerson had taken a "shooting stance," with "one arm up, looking parallel." The witness testified that he had not actually seen a weapon in Edgerson's hand, but that he had seen him turn his head and upper body toward Officer Matatall and raise his arm even with his shoulder.

Edgerson, however, repeatedly and unequivocally denied ever turning toward Officer Matatall, pointing his phone at him, or making any sudden movements toward him. He testified:

Q. All right. So you're saying that at – at no time then on December 19, 2007, while you were running from the police do you point your arm in the direction of the police officer who's chasing you?

A. No, sir.

. . . .

Q. In other words, are you saying, No, I know definitely that didn't happen, or I don't remember that happening?

A. No, I definitely know I never turned my hand – I never turned around nor turned my hands in the opposite way. I maintained. I was going forward away from the vehicle, and then that's when I fell and was surrendering.

. . . .

Q. Did you ever physically assault any officers on December 19?

A. No, sir.

Q. Did you ever verbally assault any officers on December 19?

A. No, sir.

Q. Did you ever make any sudden movements or gestures towards them on December 19?

A No, sir.

. . . .

Q. . . . . Do you remember turning back toward the officers?

A. No, sir.

. . . .

Q. Did you ever aim your cell phone at an officer?

A. No, sir.

Q. Did you ever aim or point your arm or finger at an officer as if you were going to shoot at them?

A. No.

 . . .

Q. At any time during the time that you were running did you stop, turn your entire body around, lift up your arm with the cell phone, and aim the cell phone at an officer?

A. No, sir.

Pl.'s Dep. 113, 115, 121, 130–31, R. 31-2 at PageID #423–430. Edgerson maintains that the witness who provided the testimony that corroborated Officer Matatall's story was not credible because he was a former marine and his father had been a police officer.

5

**C. Procedural History**

Edgerson brought suit against Officer Matatall and Sergeant Porter under 42 U.S.C. § 1983, alleging that the officers had violated his constitutional rights by using excessive force against him. He also alleged a separate tort claim of gross negligence against the officers and a § 1983 claim against the City of Southfield for failure to properly train its officers. After discovery, Defendants filed a motion for summary judgment.

The district court granted summary judgment to all Defendants as to the gross negligence claims and to the City and Sergeant Porter as to the § 1983 claims. The court, however, found that Officer Matatall could not succeed in his qualified-immunity defense at summary judgment. If Edgerson's version of the facts were true, the court held, then Officer Matatall had violated the "clearly established legal norm precluding the use of violent physical force against a criminal suspect who already has been subdued and does not present a danger to himself or others." *Harris v. City of Circleville*, 583 F.3d 356, 367 (6th Cir. 2009). The court thus denied summary judgment to Officer Matatall, who filed a timely appeal.

## II. JURISDICTION

In general, this court has jurisdiction only over appeals of final orders, and a denial of a motion for summary judgment is an interlocutory ruling and not a final order. *See Chappell v. City of Cleveland*, 585 F.3d 901, 905 (6th Cir. 2009) (quoting 28 U.S.C. § 1291). We may hear an interlocutory appeal of a denial of qualified immunity, however, under the "collateral order" doctrine. *Id.* (quoting *Harrison v. Ash*, 539 F.3d 510, 521 (6th Cir. 2008)). This doctrine applies "only to the extent that a summary judgment order denies qualified immunity based on a pure question of law." *Leary v. Livingston Cnty.*, 528 F.3d 438, 447–48 (6th Cir. 2008) (internal

6

quotation marks omitted). Thus, the defendant is "required to limit his argument to questions of law premised on the facts taken in the light most favorable to the plaintiff." *Harris*, 583 F.3d at 364 (quoting *Kirby v. Duva*, 530 F.3d 475, 481 (6th Cir. 2008)) (internal brackets omitted). Where the defendant's legal arguments "rely entirely on [his or her] own disputed version of the facts, the appeal boils down to issues of fact and credibility determinations that we cannot make." *Thompson v. Grida*, 656 F.3d 365, 367 (6th Cir. 2011) (citing *Berryman v. Rieger*, 150 F.3d 561, 564 (6th Cir. 1998)).

Officer Matatall asserts that his argument on appeal presents the purely legal question of whether the facts alleged by Plaintiff amount to a constitutional violation or constituted a violation of clearly established law. But Officer Matatall's argument is muddled by his misunderstanding of the qualified immunity "reasonableness" standard, as it applies at this juncture in the proceedings, and his consistent reliance on his own disputed version of the events—in particular, his assertion that Edgerson turned and appeared to be aiming a weapon at him.

"In evaluating the merits of a qualified immunity defense, we must engage in a two-step analysis: (1) whether considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and, if so, (2) whether that right was clearly established." *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Officer Matatall's arguments as to each of these two steps rely on his own disputed version of the facts.

The first step of the qualified-immunity inquiry requires consideration of the "objective reasonableness" of the officer's conduct. *Chappell*, 585 F.3d at 912. As Officer Matatall notes, "the objective reasonableness of [an officer's] conduct must be measured in light of what [he or she]

7

actually observed." *Id.* In arguing that his actions were objectively reasonable, however, he fails to limit his discussion of what he "actually observed" to the undisputed facts—which is necessary for this court to have jurisdiction over his appeal. *Thompson*, 656 F.3d at 367–68. Rather, he argues in his brief on appeal that "based on the undisputed circumstances *and* what Defendant actually observed, Matatall's use of force was objectively reasonable." Def.'s Br. 17 (emphasis added).

In support of this objective reasonableness argument, Officer Matatall notes the undisputed facts that Edgerson was fleeing from the police and that Porter had warned Officer Matatall that both of the suspects were armed. But the core of his argument is that he "observed Plaintiff turn or point the object [that he believed to be a gun] at [him] as if he was ready to shoot." Def's Br. 14.[1] Officer Matatall acknowledges that Edgerson disputes that he ever turned at all, but Officer Matatall states

_____

[1]The case law on which Officer Matatall rests his legal argument underscores his reliance on the disputed observation that Edgerson turned towards him or took actions that could have been interpreted as part of a move toward reaching for or using a weapon. In *Anderson v. Russell*, 247 F.3d 125, 128 (4th Cir. 2001), the unarmed suspect had "initially complied with the order to raise his hands, [but] later lowered them, without explanation to the officers, in an attempt to reach into his back left pocket to turn off his Walkman radio." *Id.* As Officer Matatall notes, the defendant officer in that case shot the suspect "[b]elieving that [the suspect] was reaching for a weapon." Def.'s Br. 15. Similarly, in *Slattery v. Rizzo*, 939 F.2d 213, 215 (4th Cir. 1991), as Officer Matatall describes it, the officer shot the unarmed suspect because the officer "reasonably believed the suspect to be *coming at him* with a weapon." Def.'s Br. 16 (emphasis added). In *Bell v. City of East Cleveland*, No. 96-3801, 1997 WL 640116 (6th Cir. Oct. 14, 1997), as Officer Matatall noted, this court "held that an officer reasonably used deadly force against a child who pointed what was perceived to be a gun at the officer." Def.'s Br. 18. And, in *Wilson v. Meeks*, 52 F.3d 1547, 1553 (6th Cir. 1995), the suspect had pointed a gun "to the right side" of the police officer. The court determined that, even though the gun was not pointed "straight at" him, he reasonably feared for his life and therefore his actions in shooting the suspect were objectively reasonable. *Id.* In each of these cases, the operative fact was a suspect either pointing a weapon at an officer, "coming at" an officer, or making a sudden movement that an officer reasonably perceived as reaching for a weapon. Under the undisputed facts of this case before us, Edgerson did none of these things. Only if we disregard Edgerson's testimony entirely and rely instead on the disputed testimony—which Officer Matatall explicitly requests that we do—do these cases become relevant.

that Edgerson "has no evidence contradicting Matatall's version of the facts" as corroborated by the witness. *Id.* at 14–15.

Officer Matatall's argument that we should discount Edgerson's testimony misunderstands the summary judgment and jurisdictional standards of the court. It is true that "the court is not obliged to, and indeed should not, rely on the nonmovant's version [of the facts] where it is 'so utterly discredited by the record' as to be rendered a 'visible fiction.'" *Chappell*, 585 F.3d at 906 (quoting *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)). But in this case, the only evidence in the record that Officer Matatall offers is that portion of the testimony of the "independent" witness that Matatall finds corroborating. Edgerson raises questions about the credibility of that witness, and this kind of credibility dispute is the province of the jury to decide.

The dispute among the three witnesses is a far cry from the situation the Supreme Court weighed in *Harris*, where police video evidence "clearly contradict[ed] the version of the story told by the [plaintiff]" and there were "no allegations or indications that th[e] videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened." *Harris*, 550 U.S. at 378. In his reply brief, Officer Matatall belatedly offers physical evidence to discredit Edgerson's account, arguing that medical records indicate that he could only have been shot while still standing and not on the ground. By raising this argument in his reply brief, Officer Matatall has forfeited it. *See Miller v. Admin. Office of the Courts*, 448 F.3d 887, 893 (6th Cir.2006) ("This court has held that issues are waived when not raised in the appellant's opening brief.") (internal quotation marks and citation omitted). But even were we to consider this argument, the medical evidence would require dueling expert witnesses to interpret it and thus does not present a

9

situation where one of the parties' stories is "blatantly contradicted by the record, so that no reasonable jury could believe it." *Harris*, 550 U.S. at 380.

Officer Matatall's argument on the second step of the qualified immunity test suffers from the same infirmity. He argues that the district court was wrong to find that Edgerson was "subdued" when he was shot. After citing relevant Sixth Circuit cases on the use of force after a suspect has been subdued, Officer Matatall argued that this case was different:

> In contrast to the above cases, in this case, Plaintiff was neither subdued nor restrained when he was shot. Even though Plaintiff claims when he was laying down after he had fallen, he intended to surrender, he admitted that he did not communicate his intention to anybody. *Matatall testified that while Plaintiff was on the ground, Plaintiff "raised [the object in his hand] back at me" and he fired one more shot at him before he dropped the object.* (R. 27 Ex. D, pp. 329, 330). No more force was used after Plaintiff was handcuffed and secured. Because the use of force in this case occurred before Plaintiff had been subdued, Defendant Matatall did not violate clearly established law and the district court erred in concluding that he was not entitled to qualified immunity.

Def.'s Br. 25–26 (emphasis added). We do not have jurisdiction to consider arguments that rely entirely on a defendant's disputed version of the facts.

### III. CONCLUSION

For the above reasons, we **DISMISS** Officer Matatall's appeal for lack of jurisdiction.