HAMILTON, Senior Circuit Judge,
dissenting:
In conducting its own de novo review of the record, the majority holds that Trooper Price acted unreasonably when he fired the second shot that injured Krein.* With all due respect to the majority, in my view, Trooper Price reasonably believed that Krein posed a serious threat of physical injury to both himself and Trooper Snyder at the time he fired the second shot. Accordingly, I dissent from the majority’s denial of qualified immunity to Trooper Price.
A police officer acts unreasonably if he “shoots a fleeing suspect without ‘probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.’ ” Henry v. Purnell, 652 F.3d 524, 531-32 (4th Cir.2011) (en banc) (quoting Tennessee v. Gamer, 471 U.S. 1, 3, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). Thus, as recognized in Henry, we must analyze whether Krein posed a serious threat of physical injury to Trooper Price, Trooper Snyder, or the oth *191 ers on the scene when Trooper Price fired the second shot. Id. Whether the force used was reasonable is determined “from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.” Graham, 490 U.S. at 396, 109 S.Ct. 1865; see also Waterman v. Batton, 393 F.3d 471, 481 (4th Cir.2005) (noting that “the reasonableness of an officer’s actions is determined based on the information possessed by the officer at the moment that force is employed”).
Importantly, in analyzing the reasonableness of a police officer’s actions, we must make “allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, .uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation.” Graham, 490 U.S. at 397, 109 S.Ct. 1865. We make such allowance because the “qualified immunity standard ‘gives ample room for mistaken judgments’ by protecting ‘all but the plainly incompetent or those who knowingly violate the law.’ ” Hunter v. Bryant, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)); see also United States v. Phillips, 588 F.3d 218, 227 (4th Cir.2009) (noting that reasonableness “does not, by definition, entail perfection”); Anderson v. Russell, 247 F.3d 125, 132 (4th Cir.2001) (noting that the Fourth Amendment “ ‘does not require omniscience’ ” and that police officers “ ‘need not be absolutely sure ... of the nature of the threat or the suspect’s intent to cause them harm’ ” before using force) (quoting Elliott v. Leavitt, 99 F.3d 640, 644 (4th Cir.1996)); Milstead v. Kibler, 243 F.3d 157, 165 (4th Cir.2001) (noting that “a mistaken understanding of the facts that is reasonable in the circumstances can render a seizure based on that, understanding reasonable under the Fourth Amendment”).
The majority concludes that Trooper Price acted unreasonably because “the record contains numerous indications that Price and Snyder would have been able to escape Krein’s truck without Price firing the second shot.” Ante at 188. But the dispositive question is not whether the troopers would have been able to escape without Trooper Price firing the second shot, but rather whether Trooper Price, based on the information he possessed, was reasonable in believing that he, Trooper Snyder, and/or the others on the scene were in danger of serious physical injury when he fired the second shot. While the majority’s analytical framework may address the .question of whether Trooper Price, Troopér Snyder, and the others on the scene were, as a matter of fact, out of danger at the time the second shot was fired, it does not address the outcome determinative question of whether Trooper Price reasonably believed a serious threat of physical injury was present.
For obvious reasons, the majority consciously avoids the proper analytical inquiry. The majority does not want to address whether Trooper Price was reasonable in believing that he, Trooper Snyder, and/or the others on the scene were in danger when he fired the second shot. After all, it is hard to criticize a police officer for shooting at a driver who tries to run him over and then fires a second shot when the driver accelerates toward a fellow officer. Moreover, the majority’s analytical tack allows it to avoid explaining exactly what allowances it is making for Trooper Price, who was confronted with rapidly developing circumstances in which both he and his partner were in peril. Finally, the majority’s chosen analytical path allows it to avoid addressing how Trooper Price knowingly “violate[d] the law” or was “plainly *192 incompetent” under the circumstances. Hunter, 502 U.S. at 229, 112 S.Ct. 534 (citation and internal quotation marks omitted).
A careful review of the record under the correct legal standard demonstrates that Trooper Price was reasonable in his belief that there was a threat of serious physical injury at the time he fired the second shot. Krein was a violent fugitive who yet again was trying to evade capture. Upon arriving, the troopers exited the police cruiser, which was parked at an angle directly in front of Krein’s truck, and repeatedly ordered Krein to “stop” and “get out” of his truck. (J.A. 43). Rather than complying with the troopers’ commands, Krein attempted to flee. He backed up his truck, striking some fuel pumps, and then drove forward and struck the police cruiser. He backed up his truck again, cutting the wheel so that he could escape through the small area between the police cruiser and the maroon car. At this point, Trooper Price positioned himself directly in front of Krein’s truck. Both Trooper Price and Trooper Snyder continued to order Krein to stop. Undeterred, Krein drove directly at Trooper Price, who fired the first shot that either hit the truck’s grill or went under the truck. After the first shot, Krein turned the truck’s wheel to his left and accelerated toward Trooper Snyder. Trooper Price moved to his left, “try[ing his] best to get out of the way.” (J.A. 45). From all accounts, Trooper Price was in a wedge between Krein’s truck, the police cruiser, and some fuel pumps. As he was trying to get out of the way, Trooper Price fired the second shot, which entered the front passenger window.
Based on the undisputed evidence recited above, it is self-evident that Trooper Price was reasonable in his belief that Krein presented a serious threat of physical injury to both he and to Trooper Snyder. After the first shot was fired, Krein accelerated toward Trooper Snyder. This created a serious threat of physical injury to Trooper Snyder, which Trooper Price understandably tried to thwart. Moreover, as Trooper Price was trying to get out of the way when he fired the second shot, he was reasonable in believing that he was still in peril, especially considering the tight quarters he was confined to.
The reasonableness of Trooper Price’s actions is confirmed by our decision in Waterman. In that case, police officers first fired their weapons at a car that “lurched” toward them, although the police officers were not directly in the path of the car and indeed would only have been hit if the car had swerved. 393 F.3d at 477. The car had been involved in a high speed chase. Id. In finding the first shooting justified, we focused on a number of factors, including the previous hazardous activity of the car. Id. But central to our analysis concerning the first shots was the limited time the police officers had to respond and “the closeness of the officers to the projected path of [the] vehicle.” Id. at 479. These factors led us to conclude that the police officers were justified in using deadly force for the first shots. Id. at 481.
We found, however, that the police officers were not justified in firing their weapons at the car after it had passed them and stopped. Id. This finding was based on our observation that, after the car had passed the police officers, the police officers had access to new information regarding the perceived threat and should therefore have changed their response accordingly. Id. Notably, then, the later shots fired by the police officers were found unjustified because the police officers could have actually perceived the passing of the threat. Id.
In this case, Trooper Price had just seconds to weigh everything before him. Krein was acting irrationally. He struck a *193 police cruiser with his truck. He struck diesel fuel pumps in a lot with private citizens, including children, present. He ignored numerous commands from two state troopers pointing their guns at him by driving his truck at them, just like he previously had dangerously done to other police officers. “[T]he critical reality here” is that Trooper Price did not “have even a moment to pause and ponder” all the circumstances before him. Id. at 478. Indeed, unlike Waterman, the facts of this case simply do not support the conclusion that Trooper Price actually could have perceived the passing of the threat posed by Krein, especially since Krein was accelerating toward Trooper Snyder and, at the same time, Trooper Price was trying to move out of the way of the truck when he fired the second shot.
The majority’s use of Waterman highlights once again its flawed analysis. It says Waterman is analogous to this case because Trooper Price “was no longer in danger of being hit” when he fired the second shot and because Trooper Snyder “was similarly not threatened when Price fired the second time.” Ante at 190. But, as noted above, the outcome determinative question is not whether the troopers were, in fact, out of danger at the time Trooper Price fired the second shot, but whether Trooper Price was reasonable in his belief that a serious threat of physical injury was present at the time he so fired.
Moreover, the majority’s suggestion that the circumstances present in this case are less dangerous than the circumstances present in Waterman borders on the absurd. The majority says the circumstances present in Waterman are more dangerous because that case involved “a high-speed” chase whereas Krein was “effectively trapped” by the police cruiser. Ante at 190. This position does not withstand scrutiny. First off, Krein ultimately was successful in his attempt to maneuver the truck past the police cruiser and the maroon car, so Krein’s truck was not effectively trapped. Second, while Waterman involved a high-speed chase, this distinction is inconsequential given the dangerousness created by Krein’s escape-at-all-cost mentality. More compelling, though, is that, unlike Waterman, where none of the police officers were in the path of the ear, Krein drove his truck directly at the troopers, placing them in immediate and concrete peril. Moreover, the plaintiff in Waterman had no prior criminal record, whereas Krein was a fugitive from justice wanted for crimes involving domestic violence and assaulting police officers. Clearly, then, the circumstances present in this case are far more dangerous than those present in Waterman.
In the final analysis, the majority applies a standard that requires perfection on the part of Trooper Price. He had to know and be 100% correct in his knowledge that he, Trooper Snyder, and/or the others at the scene were in danger of being seriously injured when he fired the second shot to avoid being liable under § 1983. Such a standard is incompatible with Supreme Court, as well as this court’s, precedent. “The Constitution simply does not require police [officers] to gamble with their lives in the face of a serious threat of harm.” Elliott, 99 F.3d at 641. The upshot of all of this is that the majority is penalizing a police officer who attempted to do the right thing under the tense, uncertain, and rapidly-evolving dangerous circumstances with which he was confronted. Qualified immunity is designed to protect all but the plainly incompetent. Trooper Price is a far cry from this, and it is my hope that the ensuing trial will be resolved in his favor. It follows that I would vacate and remand with *194 instructions to grant Trooper Price qualified immunity.

 The majority understandably does not uphold the flawed analysis of the district court, which denied qualified immunity principally on the basis that Trooper Price shot Krein because he wanted to prevent him from escaping. As noted by the majority, ante at 188 n. 3, Trooper Price's subjective motivation in firing the second shot is irrelevant to the qualified immunity analysis. See also Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ("An officer’s evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer’s good intentions make an objectively unreasonable use of force constitutional. ’’).