**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-1974**

JULIAN RAY BETTON,

    Plaintiff - Appellee,

    v.

DAVID BELUE, in his individual capacity,

    Defendant - Appellant,

    and

BILL KNOWLES, in his individual capacity and official capacity as Commander of the 15th Circuit Drug Enforcement Unit Task Force; JIMMY RICHARDSON, II, in his individual capacity and official capacity as 15th Circuit Solicitor; DEAN BISHOP, in his individual capacity; CHAD GUESS, in his individual capacity; FRANK WADDELL, in his individual capacity; CHRIS DENNIS, in his individual capacity; THE CITY OF MYRTLE BEACH,

    Defendants.

Appeal from the United States District Court for the District of South Carolina, at Florence. A. Marvin Quattlebaum, Jr., District Judge.  (4:15-cv-04638-AMQ-KDW)

Argued:  September 18, 2019                    Decided:  November 5, 2019

Before KING and KEENAN, Circuit Judges, and Joseph R. GOODWIN, United States District Judge for the Southern District of West Virginia, sitting by designation.

Affirmed by published opinion. Judge Keenan wrote the opinion, in which Judge King and Judge Goodwin joined.

---

**ARGUED:** Michael Warner Battle, BATTLE LAW FIRM, LLC, Conway, South Carolina; Sandra J. Senn, SENN LEGAL, LLC, Charleston, South Carolina, for Appellant. Narendra K. Ghosh, PATTERSON HARKAVY, LLP, Chapel Hill, North Carolina, for Appellee. **ON BRIEF:** James Richard Battle, II, BATTLE LAW FIRM, LLC, Conway, South Carolina, for Appellant. Burton Craige, Bradley J. Bannon, Paul E. Smith, PATTERSON HARKAVY LLP, Chapel Hill, North Carolina; Jonny McCoy, LAW OFFICE OF JONNY MCCOY, Myrtle Beach, South Carolina, for Appellee.

---

BARBARA MILANO KEENAN, Circuit Judge:

In the afternoon of April 16, 2015, a team of plain-clothed law enforcement officers armed with "assault style rifles" used a battering ram to enter Julian Ray Betton's dwelling to execute a warrant authorizing a search for marijuana and other illegal substances. The officers did not identify themselves as "police" or otherwise announce their presence before employing the battering ram. From the rear of his home, Betton heard a commotion but did not hear any verbal commands. Responding to the tumult, Betton pulled a gun from his waistband and held it down at his hip.

Three officers, including Myrtle Beach, South Carolina police officer David Belue, fired a total of 29 shots at Betton, striking him nine times. Betton suffered permanent paralysis resulting from his gunshot wounds. While Officer Belue originally maintained that Betton had been the first person on the scene to fire a weapon, a later investigation revealed that Betton never discharged his .45 caliber pistol. Thereafter, Officer Belue revised his account of the events, stating that Betton had pointed his weapon at the officers.

Betton filed suit under 42 U.S.C. § 1983 against Officer Belue, alleging unlawful entry and the use of excessive force in violation of the Fourth Amendment. Officer Belue moved for summary judgment on the ground of qualified immunity, and the district court denied his motion. Officer Belue appeals only the court's denial of qualified immunity with respect to the excessive force claim.

Construing the facts in the light most favorable to Betton, as we are required to do at this stage of the proceedings, we agree with the district court that disputes of material fact preclude an award of summary judgment. A jury reasonably could find under the facts

3

presented that Betton did not pose a threat to the officers justifying the use of deadly force. Additionally, based on our decision in *Cooper v. Sheehan*, 735 F.3d 153 (4th Cir. 2013), we further hold that Betton's Fourth Amendment right to be free from the use of excessive force was clearly established at the time the incident occurred. We therefore affirm the district court's order and remand the case for further proceedings.

## I.

Officer Belue was a member of a multi-jurisdictional "drug enforcement unit" (DEU) in South Carolina charged with the investigation of individuals participating in illegal drug activity. In 2015, DEU agents began investigating Betton, who lived in a duplex-style residence in Myrtle Beach, South Carolina. Agent Chad Guess led the investigation and worked with a confidential informant, who had purchased marijuana from Betton at his home on two occasions. The informant paid Betton about $100 in each transaction; the respective amounts purchased were seven grams and eight grams of marijuana.

Based on this information, Agent Guess obtained a warrant authorizing a search of Betton's residence for marijuana and other illegal drugs. This warrant permitted entry into Betton's residence using a standard "knock and announce" procedure requiring the officers, before forcibly effecting entry in the absence of a response, to knock on the dwelling's entry door and to announce their presence. *See United States v. Dunnock*, 295 F.3d 431, 434 (4th Cir. 2002).

4

Prior to executing the search, Agent Guess led about ten DEU agents, including Officer Belue, in a pre-search briefing. The briefing materials included information that the informant had observed two firearms inside Betton's apartment and two security cameras at the front door. The briefing materials also stated Betton's criminal history, which included convictions for marijuana trafficking in 2003, cocaine trafficking in 2007, a prior arrest for aggravated robbery in 2008, and an outstanding arrest warrant for a probation violation in Ohio.

About 3 p.m. on the day of the search, eleven law enforcement officers in three unmarked cars arrived at Betton's home. Although the cars' emergency lights were activated, the sirens were not. The shades on the front windows of the home were drawn, blocking any view through the windows. The agents were wearing a variety of plain clothes and bullet-proof vests. Officer Belue wore a baseball cap, and another agent wore a black cloth mask obscuring the lower half of his face. The word "police" appeared in small lettering on Officer Belue's and other officers' vests.

When Officer Belue stepped out of his car, Betton's neighbor, Santos Garcia, was standing next to Betton's front porch steps. Officer Belue pointed his firearm at Garcia, ordered him to the ground, and quickly led a group of five officers up the front steps to Betton's front door. Without knocking or announcing their arrival, Officer Belue opened the screen door while Agent Guess used a battering ram to gain entry through the front door. Officer Belue then followed two other agents as they entered the home with their "assault style rifles."

At that time, Betton was leaving a bathroom in the back of the residence. Hearing the break-in but no verbal commands or any other indication that the intruders were members of law enforcement,[1] Betton reached for his gun in his back waistband. Betton clarified that when he reached for his gun, he was "maybe a step from the living room[,]" where the officers had entered through the front door. Betton further described his location as standing "halfway in the living room, halfway in the hallway." Betton stated that he held the gun "by my hip. I had it down. I didn't get a chance to get to pull it up or anything."

The three officers, including Officer Belue, fired a total of 29 shots at Betton. Officer Belue fired nine of those shots. Although Betton was struck nine times, the origin of the bullets that struck Betton is not established in the record. Officer Belue stated that after Betton was struck, Betton dropped his weapon, took a few steps backward, and fell into the hallway. The agents ultimately recovered about 220 grams of marijuana from Betton's home.

Officer Belue initially reported that Betton fired his weapon at the officers first, but an investigation revealed that Betton's gun had not discharged. Officer Belue now maintains that Betton pointed his weapon at the officers. The DEU filed a charge against Betton for "pointing or presenting a weapon" at law enforcement, in violation of South

---

[1] Officer Belue stated that another officer announced "police" at least one time upon entry into Betton's home. But, as explained further below, we construe the evidence in the light most favorable to Betton, the non-moving party. *Wilson v. Prince George's Cty.*, 893 F.3d 213, 218 (4th Cir. 2018).

Carolina state law, but the South Carolina Attorney General's Office later withdrew the charge.

Officer Belue also initially had asserted that the agents had knocked on Betton's door and announced their presence, and had waited before forcibly entering the home. However, footage from the video cameras on Betton's front porch showed that the officers had not knocked on the door or announced their presence, and had not waited any length of time before using the battering ram to gain entry.

To the contrary, the video recordings showed that the officers ran up the front steps and immediately began using the battering ram. Moreover, Garcia confirmed that the officers did not announce that they were law enforcement personnel before entering the home. The record before us also contains a statement from a former DEU agent, who related that the DEU agents "almost always forcibly entered [residences] without knocking and announcing" their presence.

As a result of the shooting, Betton was placed in a medically induced coma for six weeks, endured numerous surgeries, and now is permanently paralyzed. In his complaint, Betton alleged claims under 42 U.S.C. § 1983, asserting that Officer Belue and several other officers violated his Fourth Amendment rights by entering his residence unlawfully and by using excessive force in shooting him. [2] Betton's claims against the other officers have been dismissed after settlement of those claims out of court.

---

[2] Betton also named the City of Myrtle Beach, South Carolina as a defendant, alleging that the DEU had a widespread practice of executing search warrants without following the "knock and announce" procedure. The district court denied the City's motion (Continued)

7

Officer Belue filed a motion seeking summary judgment on the ground of qualified immunity. A magistrate judge recommended that the district court deny Officer Belue's motion. Regarding Betton's unlawful entry claim, the magistrate judge found that the officers had not knocked or announced their presence before entering, and that there were no exigent circumstances warranting abandonment of the "knock and announce" procedure. The district court adopted the magistrate judge's recommendation to deny qualified immunity on the unlawful entry claim, and Officer Belue has not challenged this ruling in the present appeal.

With respect to Betton's excessive force claim, the magistrate judge found that there were material facts in dispute regarding whether Betton had pointed a gun at the officers before Officer Belue fired his weapon. Thus, the magistrate judge concluded that a jury could find that Betton did not pose an immediate deadly threat to Officer Belue or others justifying the use of deadly force. The magistrate judge further concluded that as of 2015, the law in this Circuit was clearly established that a person is entitled to be free from excessive force when the person "is on his property or in his residence, is in possession of a gun that he is not pointing at police officers, and is not given a warning or command to

---

for summary judgment, concluding that a jury could determine that the City ratified the DEU's conduct. The City did not appeal that ruling and, accordingly, that claim is not part of this appeal.

Betton's complaint also included several state law claims against Officer Belue, including claims for assault, battery, and trespass in violation of South Carolina law. The district court denied Officer Belue's motion for summary judgment on those claims, which ruling Officer Belue did not appeal. Betton also alleged that Officer Belue unlawfully had used "SWAT-like" tactics to enter Betton's home, in violation of the Fourth and Fourteenth Amendments, but the district court entered an award of summary judgment to Officer Belue on that claim.

drop the gun before he is shot." The district court adopted the magistrate judge's recommendation and denied Officer Belue's motion for summary judgment on the excessive force claim. Officer Belue challenges this holding in the present interlocutory appeal.

## II.

### A.

We review de novo the district court's denial of summary judgment. *Wilson v. Prince George's Cty.*, 893 F.3d 213, 218 (4th Cir. 2018). Summary judgment is appropriate only when there are no material facts in dispute, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

In conducting our review, we construe the evidence in the light most favorable to Betton, the non-moving party. *Wilson*, 893 F.3d at 218. We do not weigh the evidence or make credibility determinations. *Id.*

The doctrine of qualified immunity "balances two important interests," namely, the need to hold accountable public officials who exercise power irresponsibly, and the need to shield officials who perform duties responsibly from "harassment, distraction, and liability." *Id.* at 219 (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The burden of establishing the affirmative defense of qualified immunity rests on the party seeking to invoke it. *Id.*

In considering whether Officer Belue met his evidentiary burden and should prevail on this affirmative defense, we employ a two-step inquiry. First, we consider whether the

facts alleged or shown, taken in the light most favorable to Betton, establish that Officer Belue's conduct violated Betton's Fourth Amendment right to be free from the use of excessive force. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If this initial prong is satisfied, we will evaluate the second prong and answer the question whether the right at issue was "clearly established" at the time of the officer's conduct. *Id.*

B.

We first consider whether the facts as alleged show that Officer Belue's conduct violated the Fourth Amendment. *See id.* Officer Belue contends that his conduct of firing his weapon at Betton did not constitute the use of excessive force. Focusing on "the instant" that he fired his weapon, Officer Belue argues that his use of deadly force was justified because Betton posed a serious threat by drawing his pistol. Officer Belue further submits that based on this threat, it is irrelevant whether Betton knew that the intruders were members of law enforcement. According to Officer Belue, the factual question whether the officers had announced their presence is relevant only to Betton's separate claim of unlawful entry, which is not at issue in this appeal. We disagree with Officer Belue's arguments.

The Fourth Amendment prohibits law enforcement officers from using excessive or unreasonable force in the course of making an arrest or otherwise seizing a person. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Harris v. Pittman*, 927 F.3d 266, 272 (4th Cir. 2019). We evaluate whether an officer has used excessive force based on a standard of "objective reasonableness." *Graham*, 490 U.S. at 399. We assess the reasonableness of the officer's conduct based on the circumstances confronting the officer "immediately prior to and at

10

the very moment" he fired his weapon. *Greenidge v. Ruffin*, 927 F.2d 789, 792 (4th Cir. 1991). However, while we focus our review of reasonableness on the "moment that force is employed," *Waterman v. Batton*, 393 F.3d 471, 477 (4th Cir. 2005), we view the facts and any reasonable inferences in the light most favorable to Betton, the non-moving party. *Harris*, 927 F.3d at 272.

An officer may use deadly force when the officer has "probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). We have explained that an officer does not possess an "unfettered authority to shoot" based on "mere possession of a firearm by a suspect." *Cooper v. Sheehan*, 735 F.3d 153, 159 (4th Cir. 2013). Instead, an officer must make a "reasonable assessment" that he, or another, has been "*threatened* with the weapon," in order to justify the use of deadly force. *Id.*

Our decision in *Cooper* is determinative in our present analysis. There, we concluded that a suspect, who was holding a firearm at his side on his property while investigating a noise outside his home, did not present a threat justifying the officers' use of deadly force. 735 F.3d at 155, 159. In that case, two officers had arrived at Cooper's property around 11:30 p.m., in response to a report of an altercation between two men. *Id.* at 155. When they arrived, the officers heard an argument taking place inside the home. *Id.* One officer tapped on a window with his flashlight, but did not announce his presence or identify himself as a member of law enforcement. *Id.* Cooper heard the noise at his window, looked out the back door, and "called out for anyone in the yard to identify himself, but no one responded." *Id.* Investigating further, Cooper walked outside onto his

11

dark porch holding a shotgun with the muzzle pointed downward. *Id.* "Reacting to the sight of Cooper and his shotgun," the officers fired their weapons without warning, striking Cooper. *Id.* at 156.

We explained that although Cooper held a firearm, he had not made any sudden moves or threats, and had not ignored any commands given by the officers. *Id.* at 159. Moreover, we stated that if the officers had identified themselves as members of law enforcement, they may have been reasonable in concluding that "a man who greets law enforcement with a firearm is likely to pose a deadly threat." *Id.* (citing *Elliott v. Leavitt*, 99 F.3d 640, 644 (4th Cir. 1996) ("No citizen can fairly expect to draw a gun on police without risking tragic consequences.")). Instead, in view of the facts presented, we held that Cooper had a "reasonable rationale" for bearing a firearm while investigating a noise on his property and, thus, that the officers were not entitled to qualified immunity in defense of Cooper's claims against them. *Id.* at 160 (citation omitted).

Our analysis in *Cooper* is directly applicable here. Officer Belue shot Betton, who was holding a firearm "down," without first identifying himself as a member of law enforcement or giving any commands to Betton. We reject Officer Belue's attempt to distinguish *Cooper* by arguing his own version of the evidence, namely, that Betton drew his pistol, in a direction "coming up" from his waistband toward the officers. At its core,

Officer Belue's argument collapses because of his failure to accept the facts in the light most favorable to Betton as found by the district court.[3]

Betton was asked in his deposition numerous times to describe his conduct that preceded the shooting. According to Betton, he heard the front door "kicked in" while he was in the hallway after leaving the bathroom in the rear of the residence. After the initial noise, Betton heard no other sounds. And, when Betton was "maybe a step from the living room" where the front door is located, Betton saw "stuff coming at [him,]" in the form of "strange shadows" rather than people, and instinctively reached for his gun in his waistband. Betton stated that once he removed the gun from his waistband, he held the gun "by [his] hip. I had it down. I didn't get a chance to get to pull it up or anything."

In contrast, as noted above, Officer Belue initially maintained that the officers announced their presence outside the dwelling, and that Betton fired the first shot in the encounter. However, when those accounts were discredited, Officer Belue stated that Betton had pointed his gun at the officers. The magistrate judge and district court construed the facts in Betton's favor as required at this stage of the proceedings, and concluded that Betton had reached for his gun and had "held it by his right side" when the officers fired 29 shots without warning or issuing any commands.

---

[3] To the extent Officer Belue attempts to challenge the district court's conclusion that a genuine dispute of fact exists, such an argument lies outside our jurisdiction in this interlocutory appeal. *See Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015) ("The conclusion of the district court that a disputed issue of fact exists as to a particular point is not appealable under the collateral order doctrine.").

13

Our review in this interlocutory appeal is predicated on our construction of the factual record in the light most favorable to the non-movant, Betton. *See Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015). For this reason, the decisions cited by Officer Belue in which suspects made "sudden moves" to reach for potential weapons in disregard of officers' verbal commands, are inapplicable here. *See Anderson v. Russell*, 247 F.3d 125 (4th Cir. 2001) (officer was justified in using deadly force when a suspect lowered his hands toward his waist, in violation of the officer's verbal commands, even though suspect did not possess a firearm); *Slattery v. Rizzo*, 939 F.2d 213 (4th Cir. 1991) (officer was justified in using deadly force when a suspect in the passenger seat of a stopped vehicle repeatedly refused to raise his hands and appeared to be gripping an object).

Unlike these cases cited by Officer Belue, the facts in the present case align with the facts in *Cooper*. Like the citizen in *Cooper*, Betton could not have known that members of law enforcement caused the noise that he heard on his property, because the officers had failed to announce their presence at any time before firing their weapons. And as in *Cooper*, neither Officer Belue nor the other officers on the scene issued any commands after entering Betton's residence and observing him holding a gun at his side.

If Officer Belue or another officer had identified themselves as members of law enforcement, Officer Belue reasonably may have believed that Betton's presence while holding a firearm posed a deadly threat to the officers. *Cooper*, 735 F.3d at 159; *Elliott*, 99 F.3d at 644. And had Betton disobeyed a command given by the officers, such as to drop his weapon or to "come out" with his hands raised, Officer Belue reasonably may have feared for his safety upon observing Betton holding a gun at his side. *See, e.g.*, *Sigman*

14

*v. Town of Chapel Hill*, 161 F.3d 782 (4th Cir. 1998) (officer was justified in using deadly force after suspect failed to obey command to stop advancing toward officer while carrying a knife). However, under our precedent, Officer Belue's failure to employ any of these protective measures rendered his use of force unreasonable.

Officer Belue claims, nevertheless, that we are precluded from considering the officers' failure to identify themselves, because that failure relates to Betton's distinct unlawful entry claim now pending in the district court. We find no merit in this argument. We are required to consider the relevant circumstances immediately preceding the moment that force was used. *See Waterman*, 393 F.3d at 477. And, as of that time, the officers had not announced their presence in Betton's home. Moreover, were we to ignore the officers' failure to identify themselves or to give any verbal commands, we would be discounting the analysis in *Cooper* and other prior decisions in which we found such facts critical in determining whether excessive force was used. 735 F.3d at 158-60; *see also Anderson*, 247 F.3d at 130-32; *Sigman*, 161 F.3d at 787; *Elliott*, 99 F.3d at 642-44; *Slattery*, 939 F.2d at 215. For these reasons, we agree with the district court that a jury reasonably could find that Officer Belue violated Betton's Fourth Amendment right to be free from the use of excessive force.

C.

Having determined that Officer Belue's actions in these circumstances violated the Fourth Amendment as a use of excessive force, we turn to consider the second step of the qualified immunity analysis, namely, whether Officer Belue's conduct violated a

15

constitutional right that was clearly established at the time the conduct occurred. A right is "clearly established" when the contours of the right are sufficiently clear to ensure that a "reasonable official" would have understood that the alleged conduct was unlawful. *Wilson*, 893 F.3d at 221 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Decisions by the Supreme Court, this Circuit, and the highest court of South Carolina are relevant on the issue of notice to Officer Belue concerning clearly established constitutional rights. *Id.*; *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998).

The key inquiry in this regard is not whether one of these courts has considered *identical* factual circumstances and held that an officer's conduct violated particular constitutional rights. *Wilson*, 893 F.3d at 221. Instead, we consider whether officers within our jurisdiction have been provided fair warning, with sufficient specificity, that their actions would constitute a deprivation of an individual's constitutional rights. *Id.*

The officer's use of deadly force in *Cooper* occurred in 2007. Since issuing our decision in *Cooper* in 2013, the Supreme Court has emphasized that courts are "not to define clearly established law at a high level of generality," and that "specificity is especially important in the Fourth Amendment context." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (citations and alterations omitted).

Defined at the level of specificity required by the Supreme Court, the question before us here is whether it was clearly established in April 2015 that shooting an individual was an unconstitutional use of excessive force after the officer: (1) came onto a suspect's property; (2) forcibly entered the suspect's home while failing to identify himself as a member of law enforcement; (3) observed inside the home an individual holding a firearm

16

at his side; and (4) failed to give any verbal commands to that individual. The answer, as explained in our 2013 decision in *Cooper*, plainly is yes. As set forth above, the critical circumstances involving the use of deadly force in *Cooper* are present in the case before us.[4] Thus, we conclude that Officer Belue's use of deadly force presents an "obvious case" exhibiting a violation of a core Fourth Amendment right. *Kisela*, 138 S. Ct. at 1153.

Our conclusion is not altered by Officer Belue's attempt to distinguish *Cooper* in two respects: (1) arguing that it was not feasible to give Betton a warning given the "split-second situation" facing Officer Belue, and (2) arguing that Betton was a "fugitive" and an "active drug dealer." First, we acknowledge that officers often must make rapid judgments in circumstances that are "tense, uncertain, and rapidly evolving." *Graham*, 490 U.S. at 397. But here, like the officers in *Cooper*, Officer Belue and his fellow officers could have announced police presence at any time before shooting Betton. Such identification would have put Betton on notice that the individuals who entered in his home were members of law enforcement, alleviating Betton's then-justified concern to protect himself from the unknown intruders.

Second, no information in Betton's criminal history suggested that he was inherently violent to a degree that the officers would have been justified in storming into his home unannounced and in firing their weapons at him when he did not present a current

---

[4] We agree with Officer Belue that our decision in *Hensley ex rel. North Carolina v. Price*, 876 F.3d 573 (4th Cir. 2017), cannot form the basis of a clearly established right. That decision issued after April 2015, when the deadly force was used in this case. *See Wilson*, 893 F.3d at 225 (explaining that the proper question is what law was clearly established at the time the incident in question occurred).

threat. Notably, the search warrant was based on Betton's conduct of selling small amounts of marijuana on two occasions. And, although the informant observed security cameras and two firearms in Betton's home, there was no evidence indicating that Betton had engaged in threatening or violent conduct toward the confidential informant.

Accordingly, we conclude that Officer Belue's conduct of shooting Betton while Betton held a firearm by his side does not qualify as the type of "bad guesses in gray areas" that qualified immunity is designed to protect. *Braun v. Maynard*, 652 F.3d 557, 560 (4th Cir. 2011) (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)). Thus, we hold under our established standard of review that Officer Belue's alleged conduct violated Betton's Fourth Amendment right to be free from the use of excessive force, a right that was clearly established at the time the conduct occurred.

III.

For these reasons, we affirm the district court's order denying Officer Belue's motion for summary judgment and remand the case for further proceedings.

*AFFIRMED*