**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————

**No. 25-1728**

—————————

C.L.G.; C.N.G., by and through their guardian ad litem, A.G.

       Plaintiffs - Appellants

v.

SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES; KERRY REGISTER

       Defendants - Appellees

—————————

Appeal from the United States District Court for the District of South Carolina, at Columbia.  Sherri A. Lydon, District Judge.  (3:23-cv-05553-SAL)

—————————

Argued:  March 18, 2026                     Decided:  June 2, 2026

—————————

Before DIAZ, Chief Judge, RICHARDSON Circuit Judge, and KEENAN, Senior Circuit Judge.

—————————

Affirmed by unpublished per curiam opinion.

—————————

**ARGUED:**  Robert James Butcher, CAMDEN LAW FIRM, PA, Camden, South Carolina, for Appellants.  Michael Hart Montgomery, MONTGOMERY WILLARD, LLC, Columbia, South Carolina, for Appellees.  **ON BRIEF:**  Deborah J. Butcher, FOSTER CARE ABUSE LAW FIRM, PA, Camden, South Carolina, for Appellant.

—————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In this case, A.G. filed suit on behalf of her two minor sons C.L.G. and C.N.G. (the plaintiffs), seeking damages under 42 U.S.C. § 1983 from defendant Kerry Register, an employee of the South Carolina Department of Social Services (SCDSS). The plaintiffs alleged that Register violated their substantive due process rights under the Fourteenth Amendment by knowingly placing in their home a foster child with a history of sexual misconduct against other children. The district court awarded summary judgment to Register on the ground of qualified immunity. After review, we agree with the district court's conclusion that the law was not clearly established that children of foster parents[1] have a constitutional right to be free from harm caused by a state official's placement of a foster child, who had a known history of sexual misconduct against other children, in the foster family's home. Therefore, we hold that Register was entitled to qualified immunity, and we affirm the district court's judgment.

## I.

We state the facts in the light most favorable to the plaintiffs, the nonmoving parties. *Aleman v. City of Charlotte*, 80 F.4th 264, 270 n.1 (4th Cir. 2023). A.G. and her husband live in South Carolina with their three children, including the plaintiffs, who were 10 and

---

[1] In this opinion, we use the phrase "children of foster parents" to refer to minors for whom the parents have legal custody, while the terms "foster children" and "foster child" refer to those minors placed with a host "foster family" but who remain in the state's legal custody.

7 years old at the time of the incidents described below.  A.G. and her husband have served as foster parents to several different foster children over a period of years.  Before agreeing to foster a child, A.G. typically seeks information about the child's history.  She and her husband decline placement of any foster child who has experienced sexual trauma or has exhibited sexual aggression.

In January 2021, personnel from SCDSS contacted A.G. seeking a placement for J.F., a sixteen-year-old foster child.  Register, an SCDSS employee, served as J.F.'s case manager.  Before agreeing to take J.F. into her home, A.G. asked about J.F.'s background.  Among other information, Register told A.G. that J.F. should not be granted computer or internet access because J.F. "was being preyed upon by an adult."  J.A. 293.  However, Register did not inform A.G. that J.F. had been sexually abused and had engaged in inappropriate sexual conduct with other children.  J.F.'s record included a recommendation from an employee at a residential facility where J.F. had been treated that J.F. should "not be allowed around younger boys due to uncontrollable sexual urges."  J.A. 78.  This information, as well as other similar evidence of J.F.'s history, was not provided to A.G.

After J.F. was placed in the plaintiffs' home, J.F. obtained access to a laptop computer and showed the plaintiffs pornography on the internet.  J.F. also masturbated in front of one of the plaintiffs and asked him to engage in conduct they had seen in the pornographic displays.

After learning of this conduct, SCDSS removed J.F. from the plaintiffs' home.  A.G. later filed suit against Register on behalf of the plaintiffs, alleging a claim under 42 U.S.C. § 1983 for violating the plaintiffs' substantive due process rights under the Fourteenth

3

Amendment.[2]  Register moved for summary judgment.  The district court awarded summary judgment to Register, holding that she was entitled to qualified immunity because the plaintiffs' constitutional right to be free from harm in these circumstances was not clearly established.  On behalf of the plaintiffs, A.G. timely filed the present appeal.

## II.

## A.

We review de novo a district court's award of summary judgment to a defendant on the ground of qualified immunity.  *Caraway v. City of Pineville*, 111 F.4th 369, 378 (4th Cir. 2024).  Summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Aleman*, 80 F.4th at 283 (quoting Fed. R. Civ. P. 56(a)).

"Section 1983 creates a cause of action against any person who, acting under color of state law, abridges a right arising under the Constitution or laws of the United States."  *deWet v. Rollyson*, 157 F.4th 344, 349 (4th Cir. 2025) (quoting *Aleman*, 80 F.4th at 284 (internal quotation marks omitted)).  A state official named as a defendant in a Section

---

[2]  A.G. originally filed the complaint in state court and included a claim of gross negligence against SCDSS under South Carolina state law.  After SCDSS and Register removed the case to federal district court, the district court remanded the gross negligence claim against SDCSS to state court.  That claim is not at issue in this appeal.

We also observe that, despite the contrary suggestion in their brief, the plaintiffs did not allege a Section 1983 claim asserting that Register violated A.G.'s and her husband's constitutional rights by failing to disclose J.F.'s sexual history before placing J.F. in A.G.'s home.

1983 suit can seek "qualified immunity, which is more than a mere defense to liability; it is immunity from suit itself." *Id.* (quoting *Caraway*, 111 F.4th at 381 (citation omitted)).

"Qualified immunity 'shields public officials from civil liability [under § 1983] unless they violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.'"[3] *Id.* (quoting *Lewis v. Caraballo*, 98 F.4th 521, 530 (4th Cir. 2024) (citation omitted)). "A right is clearly established if, at the time of the alleged offense, the contours of the right allegedly violated were sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. (quoting *Lewis*, 98 F.4th at 534 (citation modified)).

In considering whether the right alleged is clearly established, we look to whether the law articulating that alleged right has been determined by the Supreme Court of the United States, this Circuit, or the highest court of South Carolina. *Betton v. Belue*, 942 F.3d 184, 193 (4th Cir. 2019); *see Wilson v. Prince George's Cnty.*, 893 F.3d 213, 221 (4th Cir. 2018). In the absence of direct controlling authority, we may also consider whether the alleged right was "clearly established based on general constitutional principles or a

---

[3] In determining whether an official is entitled to qualified immunity, courts address two issues: (1) whether "the plaintiff has established the violation of a constitutional right" and (2) whether "that right was clearly established at the time of the alleged violation." *Est. of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 898 (4th Cir. 2016) (internal quotation marks omitted). We are permitted to "address these two questions in the order that will best facilitate the fair and efficient disposition of each case." *Id.* (internal quotation marks and alterations omitted). If the answer to either question is no, then the official is entitled to qualified immunity. *See id.* Because we conclude that the right at issue here was not clearly established, we need not address the district court's additional holding that a jury reasonably could conclude that Register was deliberately indifferent to the risk posed by J.F.'s placement, thereby violating the plaintiffs' due process rights.

5

consensus of persuasive authority." *Ray v. Roane*, 948 F.3d 222, 229 (4th Cir. 2020) (internal quotation and citation omitted).

B.

In the present case, the alleged right at issue is whether children of foster parents have a due process right to be free from harm caused when a state official knowingly places a foster child, who has a history of sexual misconduct against other children, into the foster family's home. Having defined the right at issue, we turn to consider whether this right was "sufficiently clear that every reasonable official would have understood that what [s]he is doing violates that right." *Est. of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 907 (4th Cir. 2016) (citation omitted).

On appeal, the plaintiffs primarily contend, as they did in the district court, that this Court's decision in *Doe ex rel. Johnson v. South Carolina Department of Social Services*, 597 F.3d 163 (4th Cir. 2010) placed Register on notice that her conduct violated the plaintiffs' due process rights. Alternatively, the plaintiffs contend that the violation here was so obvious that no factually analogous precedent is required. We disagree with the plaintiffs' contentions.

In *Doe*, SCDSS officials removed siblings, Jane and Kameron, from their parents' home after reports that the children had been sexually abused. *Doe*, 597 F.3d at 166. SCDSS placed the children together in the same foster home. *Id.* Kameron later was removed from the foster home and admitted to sexually assaulting Jane. *Id.* at 167-68. The foster parents, who later had adopted Jane, filed suit on her behalf against an SCDSS employee under 42 U.S.C. § 1983, alleging that the state official had violated Jane's

6

substantive due process rights under the Fourteenth Amendment by placing her in a foster care setting with Kameron when SCDSS knew that Kameron had sexually abused Jane. *Id.*

We held that the state had a "duty" to refrain from making "a foster care placement that is deliberately indifferent to the *[foster] child's* right to personal safety and security." *Id.* at 175 (emphasis added). This "duty" arises from the special relationship created when the state places a child in foster care or otherwise assumes custodial responsibility.[4] *Id.* at 173-75. We explained that in such circumstances, the state has restrained the child's liberty, triggering the state's responsibility for the child's safety and well-being under the due process clause of the Fourteenth Amendment. *Id.* at 175.

Although *Doe* involved a state official's placement of a foster child in a home despite a known risk of harm, that case addressed a fundamentally different constitutional right than the one at issue here. As the district court in the present case explained, *Doe* "addressed the duty owed by the state to a child in its custody[,] not the duty owed to the foster family or other individuals residing in the placement home." J.A. 490. So, the decision in *Doe* could not have put a reasonable official on notice that placing a foster child

---

[4] In *Doe*, we affirmed an award of qualified immunity to the defendant because the right was not clearly established, stating that "our precedents do not foreclose a foster child's claim that her substantive due process right to personal safety and security is violated by a foster care placement made in deliberate indifference to a known danger." 597 F.3d at 176.

7

with a history of sexual misconduct in a home would violate the constitutional rights of the children of the foster family.

Additionally, we reject the plaintiffs' alternative argument that the constitutional violation here was so obvious that no factually analogous precedent is required.[5]  In rare cases, public officials can be on notice that their conduct violates established constitutional rights, even in novel factual circumstances.  *See Dean ex rel. Harkness v. McKinney*, 976 F.3d 407, 417-18 (4th Cir. 2020).  Nonetheless, the law still must provide some warning to officials that their conduct was not merely wrongful or ill-advised, but that such conduct violated another's established constitutional right.  *Id.*  This requirement has particular force here where the plaintiffs seek to extend substantive due process protections to individuals who never were in the state's custody.  *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197-200 (1989) (explaining that the due process clause does not impose an affirmative obligation on the state to protect individuals from private violence absent a custodial relationship or a restraint on a person's liberty).

The plaintiffs have not cited any authority, nor have we found any, that would put a state official on notice that placement of a foster child with a history of sexual misconduct toward other children violates the substantive due process rights of the children of the foster parents.  *See Betton*, 942 F.3d at 193; *Ray*, 938 F.3d at 229.  Accordingly, we conclude that

---

[5] To the extent the plaintiffs rely on South Carolina Code § 63-5-70 to assert an "obvious" constitutional violation, that reliance is misplaced.  That statute states that it is a felony offense for individuals to act in a manner that recklessly disregards the safety or health of a child when that child is in the individual's care or custody.  The plaintiffs were not in the care or custody of Register or SCDSS.

the right at issue was not clearly established and that Register was entitled to qualified immunity as a matter of law.[6]

III.

For these reasons, we affirm the district court's award of summary judgment to Register.

*AFFIRMED*

---

[6] We reject as meritless the plaintiffs' assertion attacking the doctrine of qualified immunity as an unconstitutional judge-made doctrine. And, after reviewing the record and the plaintiffs' briefs on appeal, we conclude that the plaintiffs' additional arguments lack merit.